# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| THOMILA GALE NETHERY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:17-cv-00537 ) |
| QUALITY CARE INVESTORS, L.P. d/b/a QUALITY CENTER FOR REHABILITATION AND HEALING f/k/a QUALITY CARE NURSING HOME, | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE NEWBERN ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 46), and Plaintiff's Motion for Summary Judgment. (Doc. No. 49). Plaintiff and Defendant each filed a Response in Opposition (Doc. Nos. 94, 73) and Defendant filed a Reply. (Doc. No. 97). For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

### I. FACTUAL BACKGROUND

Defendant owned a nursing home located in Lebanon, Tennessee (the "Lebanon Facility").[1] (Doc. No. 71 at ¶ 4). Reliant Management Group, LLC ("Reliant") provides on-site rehabilitation management services to over 700 healthcare facilities throughout the country. (*Id.* at ¶ 1). In 2010, Defendant entered into a Therapy Services Agreement with Reliant, whereby Reliant was to act as an independent contractor responsible for providing physical, occupational, and

---

[1] Defendant has since sold its Lebanon Facility to a third party. (Doc. No. 71 at ¶ 4).

speech therapy services to Defendant's patients at its Lebanon Facility. (Doc. No. 71 at ¶ 6; Doc. No. 46-5).

In 2011, Reliant interviewed and hired Plaintiff as a Licensed Physical Therapist Assistant and assigned her to work at Defendant's Lebanon Facility. (Doc. No. 71 at ¶ 9). Reliant did not consult with Defendant prior to assigning Plaintiff to Defendant's Lebanon facility, and Defendant had no involvement in the application, interview, hiring, or assignment processes. (*Id.*). Additionally, Reliant was solely responsible for conducting Plaintiff's pre-employment reference and background checks. (*Id.*).

Upon hire, Plaintiff reported to and was supervised by Reliant's onsite Director of Rehabilitation at Defendant's Lebanon Facility. (*Id.* at ¶ 10). Reliant's onsite Director of Rehabilitation set Plaintiff's work schedule, and Plaintiff was required to contact the Director of Rehabilitation if she needed to make changes to her schedule or call out sick. (*Id.* at ¶ 14). Reliant was responsible for addressing performance concerns with Plaintiff, including conducting her performance evaluations. (*Id.* at ¶ 16). Reliant set Plaintiff's rate of pay, paid Plaintiff's wages, and provided her with fringe benefits. (*Id.* at ¶ 11). Plaintiff was part of Reliant's group health insurance and 401(k) plans, and she received sick leave and paid time off from Reliant. (*Id.*). Plaintiff's paychecks identified Reliant as the entity paying her; Plaintiff's W-2 forms identified Reliant as her employer. (*Id.*).

In April 2016, Plaintiff and other Reliant employees complained to Reliant that Reliant's onsite Director of Rehabilitation at Defendant's Lebanon Facility, Patrick Grubbs, had repeatedly called them names and made lewd comments. (Doc. No. 54-1, PageID# 970–72, 981–82; Doc. No. 74 at ¶ 17.) As a result of those complaints, Reliant conducted an investigation and terminated Mr. Grubbs' employment. (Doc. No. 71 at ¶ 20; Doc. No. 1 at ¶ 14).

During this time period, Defendant employed Samantha Mullins as an Administrator to oversee operations at its Lebanon Facility. (Doc. No. 71 at ¶ 5). Ms. Mullins was not present when Reliant removed Mr. Grubbs from Defendant's Lebanon Facility, and no one from Reliant notified her in advance of either Mr. Grubbs' removal or the reason why he was removed. (*Id*. at ¶ 21). Ms. Mullins asked Reliant employees at Defendant's Lebanon Facility and Reliant's corporate office where Mr. Grubbs was, but received vague and inconsistent explanations without substantive details regarding Mr. Grubbs' removal. (*Id*. at ¶¶ 23-24). Ms. Mullins felt that she needed more information to ensure that Defendant's employees and patients were not impacted by Mr. Grubbs' complained-of behavior and decided to investigate the matter. (*Id*. at ¶ 25). As part of her investigation, Ms. Mullins interviewed several Reliant employees, including Plaintiff, regarding the complaints against Grubbs. (*Id*. at ¶ 26.) After her interview with Plaintiff, Ms. Mullins told Reliant that she did not think Plaintiff was a good fit at Defendant's Lebanon Facility, and Reliant negotiated a separation agreement with Plaintiff shortly thereafter. (*Id*. at ¶¶ 2, 17, 30).

On March 14, 2017, Plaintiff filed a Complaint against Defendant for unlawful retaliation under Title VII of the Civil Rights Act of 1964 (as amended). (Doc. No. 1). Plaintiff alleges Ms. Mullins was "upset that Plaintiff [] had reported Grubbs for creating a hostile work environment and blamed Plaintiff [] for Grubbs' termination by Reliant." (*Id*. at ¶ 15). Plaintiff claims Ms. Mullins retaliated against her "by demanding that Reliant terminate Plaintiff []'s employment at [Defendant's Facility]" because of her opposition to and charge of gender discrimination. (*Id*.).

On May 24, 2018, Defendant moved for summary judgment, arguing it was not Plaintiff's employer or joint employer, it did not make the decision to terminate Plaintiff's employment, and there is no causal connection between Plaintiff's alleged protected activity and the termination of her employment. (Doc. No. 46). On May 25, 2018, Plaintiff moved for summary judgment, arguing

no reasonable juror could find that she was not a joint employee of Defendant or that Defendant did not control her access to employment opportunity, and that she has sufficient evidence to prove her retaliation claim. (Doc. No. 49).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

# III. ANALYSIS

Title VII prohibits an employer from retaliating against their employees or applicants for employment "because [they] ha[ve] opposed any practice made an unlawful employment practice by [Title VII], or because [they] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). In order to hold Defendant liable under Title VII, Plaintiff must show that Defendant was her "employer" within the meaning of the statute. *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997).[2] In the absence of disputed material facts or the possibility of conflicting inferences to be drawn from undisputed facts, employment status is a question for the court to resolve as a matter of law. *Sanford v. Main Street Baptist Church Manor, Inc.,* 449 Fed. Appx. 488, 491 (2011).

It is undisputed that Reliant, not Defendant, was Plaintiff's direct employer. The parties do not dispute that Plaintiff was an employee of Reliant rather than an independent contractor to any entity. Plaintiff does not allege that Defendant and Reliant constitute a single employer or that Defendant was acting as an agent of Reliant. Instead, Plaintiff argues Defendant is liable under Title VII because: 1) Defendant and Reliant were her joint employers, or 2) Defendant significantly affected her access to employment opportunities. (Doc. No. 49). Defendant argues Plaintiff's Title VII claim fails as a matter of law because it was not her joint employer and it did not make decisions affecting Plaintiff's employment with Reliant. (Doc. No. 47 at 9).

**A. Joint Employer**

"One entity is the joint employer of another entity's formal employees, and thus liable under federal and state anti-discrimination laws, if the two 'share or co-determine those matters

---

[2] "Because Title VII, the ADEA, and the ADA define 'employer' essentially the same way, we rely on case law developed under all three statutes." *Swallows*, 128 F.3d at 993 n.2 (internal quotations omitted).

governing essential terms and conditions of employment.'" *Sanford*, 449 F. App'x at 492 (quoting *Carrier Corp. v. NLRB,* 768 F.2d 778, 781 (6th Cir. 1985)). The major factors in this determination are the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance. *See id.*

The joint employer analysis "is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of [an] employee[] who [is] employed by the other employer." *See Swallows*, 128 F.3d at 993 n.4 (quoting *NLRB v. Browning-Ferris Ind. of Pennsylvania, Inc.,* 691 F.2d 1117, 1122-23 (3d Cir. 1982)). Therefore, to determine whether Defendant was Plaintiff's joint employer, the Court must assess Defendant's ability to hire, fire or discipline Plaintiff, affect Plaintiff's compensation and benefits, and direct and supervise Plaintiff's performance.

1. **Ability to Fire**

Defendant argues it did not have authority to terminate Plaintiff's employment with Reliant, and cites as evidence, in part, the following deposition testimony from Reliant's corporate representative:

> I removed [Plaintiff] from [Defendant]'s [Lebanon] facility, which occurred on or about April 28, 2016. Reliant [] offered [Plaintiff] another licensed physical therapy [sic] assistant position at a client facility located in Gainesboro, Tennessee.
>
> [Plaintiff] declined that offer, however, and indicated that she was not willing to move away from where she lived to accept another position with Reliant []. So Reliant [] terminated her employment. Defendant was not involved in or consulted about the termination decision….
>
> * * *
>
> ….Clients cannot require Reliant [] to terminate or otherwise discipline its own employees whether said employee work on site or otherwise.

> Neither Ms. Mullins nor anyone else from [Defendant] ever instructed Reliant [] to terminate [Plaintiff]'s employment with Reliant [], nor would Defendant have the authority to do so.

(Doc. No. 71 at ¶ 32; Doc. No. 53-1 at PageID# 904-06). Plaintiff appears to assert the deposition testimony from former Reliant employee, Marilyn Franklin, that Defendant's administrator Ms. Mullins "said she could hire or fire anybody she wanted" is evidence that Defendant had the power to terminate Plaintiff's employment with Reliant. (Doc. No. 66 at 13-14; Doc. No. 71 at ¶¶ 31-32). In response, Defendant correctly argues Ms. Mullins' alleged statements are not evidence that Defendant had authority to fire Reliant employees. (Doc. No. 73 at 5).

Even in the light most favorable to Plaintiff, the Court finds there is no genuine dispute that the ability to terminate Plaintiff's employment with Reliant lay solely with Reliant. Accordingly, the Court finds this factor weighs against Defendant being Plaintiff's joint employer.

### 2. Ability to Affect Compensation and Benefits

The parties agree that Reliant set Plaintiff's rate of pay, paid Plaintiff's wages, provided Plaintiff's W-2 forms, and that Plaintiff was part of Reliant's group health insurance and 401(k) plans. (Doc. No. 71 at ¶ 11). Thus, Defendant argues it did not have the ability to affect Plaintiff's compensation and benefits. (Doc. No. 47 at 4, 13). Plaintiff argues Defendant provided her with a form of compensation because it provided the equipment and space she used to perform her job as a physical therapy assistant at Defendant's Lebanon Facility, (Doc. No. 94 at 10). However, Plaintiff presents no evidence that Defendant had the ability to affect her compensation or benefits with Reliant.

Even in the light most favorable to Plaintiff, the Court finds no reasonable jury could conclude Defendant shared control over Plaintiff's payment and benefits with Reliant. Accordingly, the Court finds this factor weighs against Defendant being Plaintiff's joint employer.

7

### 3. Ability to Discipline

Defendant contends Reliant had the sole authority to discipline Plaintiff. (Doc. No. 47 at 5, 11; Doc. No. 71 at ¶ 16). Plaintiff provides evidence that Defendant received complaints from its employees and nursing home residents about Reliant employees, (Doc. No. 64 at ¶ 4; Doc. No. 51-1 at PageID# 802-03), but offers no evidence that Defendant disciplined or had the ability to discipline Plaintiff or any other Reliant employees. Plaintiff also contends that her "removal from the site could be viewed as discipline" but provides no evidence or legal authority in support of that position. (Doc. No. 94 at 13).

Even in the light most favorable to Plaintiff, the Court finds there is no genuine dispute that the ability to discipline Plaintiff lay solely with Reliant. Accordingly, the Court finds this factor also weighs against Defendant being Plaintiff's joint employer.

### 4. Ability to Direct and Supervise Performance

It is undisputed that Plaintiff reported to and was supervised by Reliant's onsite Director of Rehabilitation. (Doc. No. 71 at ¶ 10). It is also undisputed that Reliant set Plaintiff's work schedule, conducted her performance evaluations, and was responsible for addressing performance concerns with Plaintiff. (*Id*. at ¶¶ 14, 16). In performing her job as a physical therapist assistant, Plaintiff followed the guidelines and goals set by the evaluating Reliant registered therapist. (Doc. No. 54-1 at PageID# 1009). Plaintiff presents no evidence that Defendant directed her day-to-day work as a physical therapist assistant or had the ability to do so, except to the extent it expected her to follow safety and patient care related policies. (*Id*. at PageID# 1003-08; Doc. No. 96 at 4-5).

Even viewing the evidence in the light most favorable to Plaintiff, the Court finds no reasonable jury could conclude Defendant shared control over the ability to direct and supervise

Plaintiff's performance with Reliant. The Court finds this factor weighs against Defendant being Plaintiff's joint employer.

* * *

The Court finds there is no genuine issue of material fact regarding the "essential terms and conditions" of Plaintiff's employment: Plaintiff was hired by Reliant, her daily work was scheduled, directed, and supervised by Reliant employees, her wages and benefits were dictated and provided by Reliant, and her employment was terminated by Reliant. Accordingly, the Court concludes Defendant was not Plaintiff's joint employer for purposes of Title VII. *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1228-31 (10th Cir. 2014) (concluding defendant was not plaintiff's joint employer for Title VII purposes where it did not have authority to terminate plaintiff's employment or to supervise and discipline plaintiff "beyond the confines of a vendor-client relationship"). [3]

---

[3] As in the present case, the *Knitter* plaintiff was employed by a contractor vendor that assigned her to work at a certain client location. 758 F.3d at 1217. The plaintiff complained she was being harassed and discriminated against, and the client asked the plaintiff's employer not to send her to its location anymore. *Id*. at 1223. The plaintiff's employer subsequently terminated her employment. *Id*. The plaintiff filed a Title VII action against the client, which the district court dismissed on summary judgment, holding that the plaintiff had not been employed by the client and therefore could not maintain a Title VII action against it. *Id*. at 1224. The Tenth Circuit affirmed after employing the joint employer test, explaining:

> [Plaintiff's employer] was a vendor and [defendant] was a client. [Defendant] exerted the sort of control over [plaintiff] that one would expect a client to exert over its vendors—supervising limited aspects of their work, providing them with instruction on particular tasks, and furnishing some supplies when necessary.
>
> [Defendant] regularly uses dozens of vendors in its daily operations. These vendors are not all "employees" of [Defendant] for Title VII purposes merely because [Defendant] notifies them what services it desires and requires compliance with its safety rules for them to work on its premises.… [plaintiff] has not offered sufficient facts for a reasonable jury to find [defendant] was her joint employer rather than a client of [plaintiff's employer].

*Id*. at 1231.

### B. Significantly Affects Access to Employment Opportunities

Plaintiff also argues Defendant is subject to Title VII liability because it significantly affected her access to employment opportunities. (Doc. No. 66 at 18-20; Doc. No. 94 at 13-18). As Plaintiff notes, in *Christopher v. Stouder Memorial Hospital*, 936 F.2d 870 (6th Cir. 1991), the Sixth Circuit, relying on the D.C. Circuit's decision in *Sibley Mem. Hosp.* v. Wilson, 488 F.2d 1338 (D.C. Cir. 1973), held that a non-employer may be liable under Title VII if it significantly affects an individual's access to employment opportunities. (Doc. No. 66 at 18-19).

In *Christopher*, a scrub nurse employed privately by doctors brought a Title VII retaliation claim against a hospital that revoked her nursing privileges. The Sixth Circuit found that the nurse was neither an employee nor an independent contractor of the defendant hospital, but "held nonetheless that she could pursue her Title VII claim because the hospital *affected her employment opportunities with third parties*, namely, physicians who employ scrub nurses *if* they have hospital privileges." *Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004) (emphasis in original) (citing *Christopher*, 936 F.2d at 875, 877).

In *Sibley Memorial Hosp. v. Wilson,* 488 F.2d 1338 (D.C. Cir. 1973), the defendant was a hospital that ran a nursing office to assist placement of private nurses for patients who requested them. *Sibley,* 488 F.3d at 1339–40. The plaintiff was a male private nurse who sued the hospital claiming that it had refused to refer him to female patients and on occasion prevented him from reporting to female patients who had requested a nurse. *Id*. The D.C. Circuit "held that even though the hospital did not directly employ the male nurse, it could be liable for employment discrimination because it had used its control of plaintiff's access to potential [patients] to deny him significant employment opportunities." *Redd v. Summers*, 232 F.3d 933, 940–41 (D.C. Cir. 2000) (citing *Sibley,* 488 F.3d at 1342).

Plaintiff argues Defendant controlled her access to employment opportunities in the same manner as the hospital in *Christopher*. (Doc. No. 66 at 19 ("Defendant's refusal to continue to grant Plaintiff the privilege of working in its nursing home for Reliant is no different from *Stouder's* refusal to grant Christopher the limited privileges necessary to work in its hospital.")). However, the *Christopher* structure is absent in the present case. Defendant was simply a consumer of Reliant's services, not an intermediary between Plaintiff and Reliant. Unlike the hospital defendants in both *Christopher* and *Sibley*, Defendant did not have control over Plaintiff's access to employment opportunities with Reliant or any other third party. Even though Reliant had a practice of removing Reliant employees from Defendant's Lebanon facility that Defendant deemed "not a good fit", Reliant alone controlled Plaintiff's access to employment opportunities with Reliant. Therefore, the Court concludes that Plaintiff cannot bring her Title VII claim against Defendant under the "significantly affects access" theory.

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE